Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Thank you. This afternoon we have a force the United States of America versus Israel. Um, and Mr Israel is the appellant. Mr Melkonian. Thank you, Your Honor. And made please the court. Rafi Melkonian for the appellant in this matter. Mr Israel, just one quick note. I apologize. My location is different than it would be. I had a technical problem right before we logged on. So please let me know if you don't hear me as well as you might normally. In any event, let me get to the argument. Uh, in order to prevail here, Mr Israel has to prove both prongs of the Strickland test. As the court knows, he has to prove that his counsel's conduct fell below a result of his counsel's conduct. During this litigation, we believe Mr Israel amply satisfied both of those prongs and that this court should reverse the judgment below and grant Mr Israel's 22 55 motion. Let me start with what I think is the fundamental point in this case, which is that Mr Israel has a profound mental illness. I don't think our friends on the other side disagree with me. I think everyone agrees. Mr Israel has been mentally ill his whole life. He was mentally ill when he committed these crimes, and he is still severely mentally ill. The government may have a different view on the legal consequences of all that. But just the fact that Mr Israel is a schizophrenic and has extraordinary challenges with mental illness, I don't think anyone disagrees with. So the question to me, at least with respect to this case, is whether a lawyer having the red flags that his client is and the way that Mr Israel clearly is, is obligated to make some kind of investigation into what kind of mental illness that is, what use could be made of the mental illness and to present defenses based on the mental illness if they strategically make sense for his. It seems like that we encounter defendants on appeal who have schizophrenia. You seem to be saying any time someone has that diagnosis, counsel has to investigate and has to ask for a competency. Is that your point? Is that your position? No, Your Honor. I think that would go too far. I think the rule should be something like when you have someone as profoundly schizophrenic as Mr Israel, you need to at least call his doctor, call his psychiatrist and find out what is the level of schizophrenia or mental illness you're dealing with here. And I think if you do that, you have a very good argument, or at least the government has a very good argument that, look, we've made a strategic decision about our client's mental illness and therefore, you know, we're not pursuing that because we have these other defenses or maybe it's not glorious. Are you contending that he lacked the capacity to proceed? I'm, Your Honor, I'm contending that it was, there was enough of a suspicion in the event that they should have been investigated into that. Yes, Your Honor. That's exactly it. I'm contending that there was enough here for his counsel to at least seek a competency hearing with respect to Mr Israel's competence to go forward. And the fact that he didn't look into that even is what is the inadequate assistance of counsel and caused him prejudice by not seeking the competence. You know, it seems to me, though, one thing that I had a problem with reading this record, has any expert ever said that he was incompetent in their expert opinion at the time that he pleaded guilty? No, Your Honor. It seems we're on habeas, right? Why hasn't that, it seems to me that's a necessary element to truly show prejudice. What's the point of a hearing if no expert's going to say, yes, in my opinion, at the time he guilty, he was incompetent. Well, Your Honor, I think the way I would answer that is to say that that is what we're saying was wrong with the representation below is that there was no psychiatric evaluation sought of Mr Israel, and we don't have in the record anything that could tell us, was he incompetent at that time? I think there's no way there's no basis for granting relief unless somebody says yes, at the time he pled guilty, he was it seems to me, unless somebody says that there's nothing a court can do. I have to say, I disagree with that, Your Honor. I think that our point is not that there was enough in this record to show definitively that he was incompetent. It's that had counsel press that point and gone and gotten even investigated the question, we would have had that available in our record. So the prejudice is first thing he should have done was to call it to the judge's attention. Sorry, Your Honor, I didn't hear you. I said the first thing counsel should have done would be to call it to the judge's attention that he thought his class might not be able to to assist in his proceeding. I think that's correct, Your Honor. And here the record is that counsel did exactly the opposite. He assured the judge that there his client was competent, even though he had no basis to come to that conclusion. He hadn't done even a phone call to his client's psychiatrist or treating doctor to ask him, Look, what is the depth of this person's psychiatric illness? And I think that is where the prejudice comes from with respect to the competency. Now, I did want to show what competent counsel would have discovered had he done that Your Honor, I think I heard you say, Don't I have to show what competent counsel would have discovered? Had he done that investigation? Um, I don't think we need to show what he would have discovered. I think what we can show is that he didn't do any investigation and that had he done so, there's very good reason to believe he would have found a lot of evidence that Mr Israel is not competent, even on this very sparse record. Uh, I know my friends on the other side, with respect to competence alone, are going to say, Well, look, he looks perfectly rational when he's talking to the judge. He answers the judge's questions. He answers the questions of the parole board with respect to the PSR. So what's your problem? I know that that's one of the arguments they're gonna make, but I don't think that's true. Factually, if you look at this record, Mr Israel, even though he looks competent or not competent, you know, maybe rational to people he's talking to, he tells all kinds of untruths to those people while he's talking to them. And I don't think he means to. I think from the record, it's clear that he's, you know, being afflicted by his mental illness. So, for example, he tells the judge he did his high school in Chicago. That wasn't true. He told the parole board that he had been shot. That wasn't true. He tells all kinds of other things. He says he has 10 siblings, and that isn't true. And I can go through a whole she on in that case and in profit and beavers. This court's trilogy of cases with respect to mental illness is that you can't take the word of someone who has a severe mental illness like this as gospel truth with respect to whether he's being competent or not. The lawyer has to do something to try to probe if there's red flags like this serious red flags to try to probe whether Mr Israel is competent at the time he pleaded guilty or not. The government has said that Mr Israel's opening brief did not raise the issue of the failure of the district court, the federal district court to hold a hearing. It has. Is that off the table? Because it wasn't in your client's initial brief? No. Let me explain why I think that, uh, I think if my argument had been that the district judge erred in not granting an evidentiary hearing, that's not in the record, and that wasn't granted to me in the certificate of appeal ability. And so I don't think I could have raised that argument. But what I would say is that the relief you grant is not off the table. So we're asking for you to reverse the judgment, you know, vacate the conviction, grant the 22 55. But you can grant relief that short of that. That's certainly well within your authority. You could vacate the sentencing on, you know, remand for sentencing. You could remand in a limited remand for, you know, an evidentiary hearing. You could do all of those things. So I don't think it's off the table. I think what would be off the table is an independent argument by me that the failure to grant an evidentiary hearing is the error and that I'm not making because I didn't have that, you know, in my record, and I couldn't make that argument. But that's not the point, I think, of the evidentiary hearing argument. The problem is, and it kind of gets back to Chief Judge Owens original question. I mean, if there's not an expert that's going to say he was insane at the time of the crime, or he was incompetent at the time of the pleading, I mean, of the plea hearing, then what is the point of an evidentiary hearing or anything else? Well, I think that the remand would be in that case, or, you know, whether it's for an evidentiary hearing for another trial, would be within the instruction that you've got to do that in order to offer him competent counsel. And so I think on remand, a lawyer would do that. You would go get an expert. But go get I mean, that's isn't that kind of flipping the burden. So I mean, before you get a hearing before anything, because I mean, everybody could claim to be mentally ill, right? Anybody could claim that if they want it. And what would distinguish that somebody just claiming that from somebody who actually is, and more specifically, someone who actually was therefore incompetent, because mental illness is not the equivalent of incompetence. And that is the expert testimony. So before we ever get to the hearing, or we ever get to that there needs to be, you know, an affidavit from an expert or a deposition or something. And that's what we are missing here. So that's why to me to send it back to say, let's start at mile one, developing evidence seems to be the well, let me try to push back this way and say that there is plenty in the record that indicates that Mr. Israel wasn't saying at the time that he committed the crime and incompetent at the time he did the plea bargain. And I you know, I've used the record as best as I could that we have in front of us to show that, you know, we have Mr. Israel on 20 milligrams of how doll at the time after he was arrested. There's voluminous evidence in the record that he has been in a mental institution, that he escaped from the mental institution. He's had all kinds of hallucinations that I don't think the government says weren't true. So if the problem is we don't even have enough evidence to get to the evidentiary hearing, I would resist that. I think there's plenty in this record to get you there. And this differentiates it from other cases where there's nothing at all, where the person is. Yeah. I'm sorry. I was gonna say in our death penalty cases, for example, before you ever get to the habeas proceeding, they ask, they go into court and ask for money for experts and say, I need to develop the record here. It wasn't developed in state court because of ineffective assistance of counsel. And they get experts and then they come in at the COA stage and the habeas stage and say, we have experts who are going to testify that this defendant was incompetent at the time he plead guilty or insane when he committed the crime. So we don't ask, they don't ask for C. A. C. O. A. Or, uh, habeas relief to go start that investigation because it's it's a fishing expedition expedition. Otherwise, I mean, do you see where I'm your honor? I see your point. And my answer is simply that we have enough here to go forward on that. And it's just the fact that we didn't, you know, I Mr Israel pro se did not get experts to, uh, testify to his mental illness before the certificate of ability appeal ability was granted. And so we're left with the record we have. But I think the record illustrates that there's plenty here that differentiates it from that kind of case that your honor is talking about, where someone is sort of inventing a post hoc rationalization for why they committed the crime and trying to, you know, go into a fishing expedition. What I think is what's your best case that in this procedural posture, you're entitled to go back in and look for evidence. I think bushy on is like that. I don't think there was any kind of hearing in bushy on, and this court remanded despite the fact that there had been no expert testimony precisely because, um, trial counsel had failed to develop it. And I think that's the same claim we're making here. I think it's bushy on profit and beavers. All of those air cases. Actually, I think profit there was a psychiatric, um, analysis, but the other two there wasn't eso. I think those are the cases I rely on. And if those cases, you know, can't get me shortly before this. I think it was about 10 years before this, Your Honor. He was an institution. No one has no expert has cleared him as being confident proceed. Absolutely not, Your Honor. And I think the experts have your case is not. You're not building a case for self defense. You're building a case that there was enough evidence that he lacked confidence to proceed. That's it. The lawyer should have pursued investigated before letting him proceed. Is that your argument? Yes, Your Honor. That's exactly my argument. It's not that we have the evidence. It's that Mr Israel was deprived. You listed fully the evidence you think should have triggered an inquiry into his competency to proceed. Your Honor was the question. Have I listed it fully? Yes. In this argument? Yes, I've put it in the brief, but I can also talk about it right now, which is that, um, you know, Mr Israel had schizophrenia. There's no question about that in terms of his clinical diagnosis. That's in the record on appeal. As far as we've got it, Mr Israel says that and there's no question about this, that at the time he was arrested, he said he was being pursued by a demon, and first from hallucinations, he says that, you know, radio speak to him and give him commands to do things. So the record is full of things that Mr Israel did believes that he could show that he is incompetent. I see that my time is up. I'm sorry for going over. Uh, Miss Trust, would you add a minute or two to judge Mr Bradshaw's? Mr Bradshaw. Thank you, Your Honor. And may it please the court. Jonathan Bradshaw on behalf of the United States. This court should affirm the district court's denial of habeas relief because all of Mr Israel's ineffective assistance claims fail to succeed under the two part test established in Strickland. This court focused in the opening argument on the competency issue. So I want to start right there. Um, Judge Owen, Chief Judge Owen and Judge Haines. You both raised the question of prejudice in this context, and in the government's view, that is the easiest way to resolve this case. That is where Mr Israel's claim falls short. He has not produced evidence to satisfy his burden under Strickland and Bushel on that he was incompetent at the time that he pled guilty on the question of expert testimony. This was Mr Israel's motion. His chance to get that evidence and present it to the district court was on the front end. It is not enough for him to say, um, I have a severe mental illness, and therefore we need to go back to square one at which I can start an investigation and prove that I'm incompetent. What's your best case that says that's the way it should happen? Bushel on your honor. Um, and because it makes clear what the prejudice inquiry is in this context, it is simply not enough to have a mental illness. As the court said, not all mental illnesses create an issue of competence and, uh, parroting Strickland. The court got it exactly right there. What the standard was he has to have a reasonable probability that had a competency evaluation been done, he would have been found incompetent to proceed in the government's view. This record shows that Mr Israel was competent to proceed. There are a few facts I want to highlight for the court. The first is Israel's counsel's statements to the district court at sentencing. No less than four times does Mr Israel's assistant federal public defender assure the court that Mr Israel is competent to proceed. Mr Israel also under oath at his own his own re arraignment tells the court that he's competent to proceed, and he also evidences his competency. So, uh, the district court is after he had discussed the factual resume with Mr Israel. And I'm in our away 3 08 and 3 3 88 and 3 89 for the court's reference. The court is talking about the potential penalties that Mr Israel may face if the court accepts his guilty plea. And the court says you can face a sentence of 20 years. And Mr Israel says, Can you repeat that? And the court says, um, your sentence could be 20 years. And he said, Wait, that part right there. I thought my factual resume said I was pleading to a 0 to 20 offense, not a I was gonna get 20 years. Are you saying I'm gonna get 20 years? And the court then explained to him. No, it's potentially up to 20 years. And they went forward with the plea. But that sort of interaction shows that Mr Israel understood the nature of his proceedings and had discussed the factual resume with his lawyer in a way that assured his lawyer that he was competent to proceed. That's exactly what his lawyer told the court. Uh, what? What about expert testimony? Are there cases where we have, in fact, said, even though there's no expert testimony, we will remand and allow you proceed playing further. Uh, Mr Balconian referenced Bushel on. I read that case slightly different than he did there. There was an evidentiary hearing at the federal habeas level in the district court on the 22 54. And there was expert testimony. It was four years after the fact. But that expert opine that Mr Bushel on was not, um, potentially not not competent. I have not seen a case where the defendant simply comes forward with allegations of incompetency and gets a remand in the way that that you asked. Chief Judge, I think I'm sorry. The short answer questions. No, I should have started there. But I haven't. I haven't seen that case. Let me ask this. I mean, more than just allegations cast. I believe it. That's Mr Mellon. Come on is making up things. There's certainly pieces of evidence beyond just allegations. To be clear, Your Honor, there is a letter from his psychiatrist in the record post states that the plea the plea agreement here. I mean, the police stage and the suffers from schizophrenia. So I'm not disputing that he does not have a mental illness, but I don't see, um, credible evidence in the record that cast doubt on his competency. And that's that's the key here. And another point I want to make on that is Mr Israel had has suffered numerous prior criminal convictions and not once the government is aware that he's ever been found incompetent to proceed in any of those prior proceedings or ever been found not guilty by reason of insanity defense. And so I think the lack of that, the lack of expert testimony and evidence showing that he understood the nature of the proceedings cuts against his claim for prejudice. Judge Haynes, I wanted to give you a chance to I want to. So my question is, what do you do about if, in fact, he really was incompetent and now he's representing himself, pro se, and he's got to prove his incompetence while he's incompetent? Is that a bit circular? I mean, if we're saying you didn't do this right, you didn't get your experts, you didn't yada, yada, yada. But the reason is, and I'm not saying it is, but let's say the reason is because I mean, you know, I don't know if you've known anybody who has Alzheimer's or something, but they're gonna have trouble representing themselves. And so somebody with a mental illness may or may not be able to, you know, put this together. Well, it's difficult enough to be pro se, even for, you know, people that have no mental, uh, frailty. A couple of responses to that. So first, I just want to start with the standard and the standard comes from the Supreme Court in Strickland, and the standard makes clear that it is his burden. Um, on the question of whether he could have come up with an expert, he attached to his motion some 70 pages of medical records to illustrate to the court that he, uh, what was incompetent on what's missing from those medical records is a diagnosis of incompetence. But, um, I don't want to speculate about what's not in the record, but presumably between his motion and the evidence he did present, um, if there was additional evidence, it seemed like he could have gotten it. Okay. And I want to ask, Are there any cases? Because it seems like, um, counsel for the petitioner is arguing that schizophrenia is somehow the equivalent of incompetence. And I'm very concerned about that, because I very it can be. But I disagree that it that it is affirmatively that regardless, are there any cases that hold that that schizophrenia equals incompetence period? End of story. No, Your Honor. And Boucher Leon actually holds the exact opposite, which is mental illness is not per se incompetence. And so that's what I would point the court to to push back on the idea that schizophrenia is in any way, per se, incompetence. That's not mine. Chief Judge Owen, you have the defendant's contention. He's not contending that that the opposite. He's not contending that schizophrenia per se is incompetence. He's contending there's enough evidence at the time of the plea that should have alerted the defense counsel to the fact that he could might not have capacity to proceed and should have investigated that and should have called it to the attention of the district judge. That's I think his argument. I may be wrong. Understood. To be fair, I understand the court's point. To the extent he's saying it's per se, it's certainly not. I did want to touch on Chief Judge Owen's question about the evidentiary hearing. Mr Malconian said that he was unable to raise the issue of failure to brief failure to hold an evidentiary hearing because he didn't have a C. O. A. On that claim, this court has made clear in Norman's versus Stevens and other cases that no C. O. A. Independent C. O. A. Is required to brief trial courts failure to hold an evidentiary hearing before denying habeas relief. So I don't think that this court was without jurisdiction for some way to entertain that argument. Um, it's just the argument was not in the brief and the government didn't respond to it because it wasn't raised. Uh, and I would direct the court back to the Valdez case footnote six, which just, uh, makes clear that the failure to raise that argument in the opening brief does constitute a waiver of the issue. And so, um, the government's position is that this court should not remand this case for an evidential habeas evidentiary hearing. It's good. Go ahead. Well, because we haven't really touched on this. There's also this point of the mitigation, and I'm not sure that requires quite the same evident evidentiary expert testimony that we've been alluding to with the insanity and the incompetence because there the question is just trying to convince the judge to give you a lesser sentence. And it's a much broader world that you can point to. And I do think there's evidence of mental illness here, um, that you could point to, but was not pointed to to try to mitigate the sentence. And indeed, the sentence was higher than the sentencing guidelines. So tell me why that isn't something we should at least, um, revisit, if you will. Your honor, the short answer is that was a strategic choice, which is virtually unchallengeable under Strickland. And my record evidence for why that was strategic, um, starts actually before the sentencing hearing is held. Mr Israel writes, uh, a letter to the court on the eve of sentencing. It's at R. O. A. 2 50. And he complains to the court. He also astutely sends a copy to his counsel and says, My counsel has refused to focus on my mental illness at the time I committed this crime. Um, and Judge McBride orders, uh, the A. F. P. D. And Mr Israel to get together and talk about that allegation before sentencing. So, um, consistent with that order, uh, the part of the lawyer and Mr Israel meet, and the lawyer files a notice with the court that says, Your honor, we've met. We've discussed the things that were outlined in your order. We are ready to proceed with sentencing. And it's sentencing. They mentioned nothing about the mental health evidence. Instead, the strategy was to make the prior crimes seem far in the past. As Mr Hermes Meyer inch attempted to emphasize these crimes happened 10 years ago. He hasn't had a recent stiff sentence. There is no reason to upwardly depart and evidence of the kind that the court is talking about, which is Mr Israel committed these crimes under psychiatric compulsion. He has a mental illness that is under controlled or not controlled, is inherently double edged, and counsel strategically chose not to push that evidence because it would have cut against his strategy of attempting to minimize the conduct. The other point I want to make on that is the council's objections to the probation officer's recommendation on taking acceptance of responsibility were still live as they were going into the hearing. So recall at the PSR interview, Mr Israel says, You know, there's evidence in there. He's pointing to the discovery that says I attempted to carjack someone, and I don't remember attempting to carjack someone and the probation officer. His lawyer stops him right there and says, Don't say another word about that. And the probation officer then recommends that the remove Mr Israel's acceptance of responsibility and his counsel objects, and he does so repeatedly. He files three written objections to the PSR on the denial of acceptance and going into the sentencing hearing. His first argument right out of the gate is on the objections. He says, Your honor, we think we've accepted responsibility. My client should get credit for that. And if Mr Israel had been turned around and started arguing, I also had these mental illnesses that changed the way, um, I act, then Judge McBride may have found another reason to deny acceptance at that point. But because the objection was still live, I think this record shows that counsel's choices on that point were strategic. I guess I can understand on the acceptance responsibility point. Let's just assume that arguendo. But once that's overruled, why wouldn't he go back and say just in general, just kind of like when they say, Look, he has seven Children, and they all are crying that he's gonna be gone for 10 years. I mean, there's all kinds of things that are said in mitigation that aren't like as a matter of law required to be accepted by the court, but are considered in the broad sphere of somebody's life. And so when you look at someone and they're just evil, they're just running around committing robberies because they're evil. That is different from someone who's doing it because they have mental illness. So why wouldn't I don't understand the strategy once you're just talking in general about mitigating the sentence, not about the sentencing guideline, but just mitigating the sentence. Sure. As I understand what Mr Israel wanted his counsel to argue at sentencing was I have mental illness is, um, sometimes uncontrolled. And because of that mental illness, I commit crimes. And if he had argued that, then the district court could have looked at the 35 53 factors and said, That's actually a reason to impose a longer sentence because we need to protect the public from someone who either under medicates or does not control his illness and as a result goes out and commits crimes. And that would have also turned the spotlight back on to Mr Israel's criminal history, which is lengthy. And counsel's strategy was to turn the spotlight away from it. It's a long time in the past. He's not a criminal anymore. He's been on the straight and narrow is runs headlong into. He's also got a lifelong mental illness that causes him to be abusive to his wife on commit crimes, and it's under controlled. So again, I think this is strategic. It Strickland doesn't demand counsel to be perfect, and it also encourages this quarter instructs this court to eliminate the distorting effects of hindsight. We know that Mr Israel got a statutory maximum sentence, but counsel didn't know that at the time he was preparing for the sentencing and getting ready to make these arguments. And so once the record shows a strategy, as long as it's not per se under unreasonable under Strickland and Strickland demands that we give that that council's performance, uh, credit essentially. It that's covered all of the points I wanted to make to the court today. If there are any further questions, I'll be happy to, uh, answer them. If hearing none, I'll be glad to see the balance of my time back to the court. Thank you, Mr Bradshaw. Mr Malcony. Thank you, Your Honor. Let me address a few points in response to that. First of all, let me just answer Judge Haynes's point about whether schizophrenia is per se incompetence. I agree that that's not true. I think my only point there is that schizophrenia can be can cause incompetence. And I think what I was trying to argue, um, and maybe I misspoke was that the government's into Section 17 for mental illness is incorrect. I mean, that's what this court held in the long case that schizophrenia can require a jury instruction with respect to insanity. That's all I'm saying. I'm not saying that there's any per se rule with respect to what do you do with the fact that I appreciate that, because I just think that that's, you know, it should just be very clear that schizophrenia can be and often is thing is incompetence. But anyway, I mean, what do you do with the fact that even if it could create insanity in, uh, Mr X, that in the case of Mr Israel, he clearly was aware that what he was doing was wrong because he's changing his, um, hair and his looks and he trying to hide and he's telling the bank person to open the vault or whatever, give him the money or and and then he's trying to carjack when he's being chased. And so, I mean, all of that would suggest he's fully aware of the fact that what he's doing is illegal, and that's really all that needs to be shown to overcome the insanity. So actually, I disagree with that. You're on respectfully. But let me try to explain why this court said. I think it's Miller v Dretke that even those kind of post crime sort of maneuvers do not necessarily mean that you don't get an insanity charge at your trial. That's the case where this person was a 9 11 sort of conspiracy theorist, and he sent some kind of white powder to test the government on whether he was properly controlling the mail or something like that. And one of the arguments the government made in opposition to his arguments was, Look, um, he clearly knew what he was doing was wrong. He did all these things to evade capture afterwards. And when they finally caught him, he said, I'm surprised it took you so long. And the court said, No, that doesn't necessarily mean that he doesn't get an insanity defense with respect to what he was doing. He could still not understand the nature of consequences of what he was doing, even though he's trying to take from the police. Is there anything in the facts of these crimes that suggests he didn't know what was going on until the point about saying Damon told him to do it or whatever. But just the way he's conducting this, that he I mean, when you're having to threaten someone, I'm not having to threaten you to get you to answer my question. I'm not saying I'm going to shoot you if you don't answer my question. So it would suggest that I don't think that I'm doing something illegal. Whereas when I have to force someone to do something that tends to suggest that you know there's a problem with that to directly answer your question, Your Honor. No. In that sense, you know, I don't think there's anything in the course of how exactly he's doing the crime. But you're right. There's the Damon situation. There's the fact that he told the police or the hospital people that he had been shot, which wasn't true. All kinds of indications on the day of that arrest that he was acting in a completely irrational manner that is inconsistent. Irrationality because one could argue it's irrational to commit any crime. But it's whether he knew what he was doing was wrong or, you know, unlawful. Not whether this was a good idea was a lot of criminal events that did not look like a very good idea. So that isn't the question as well. I mean, simply saying after the fact, Oh, Damon told me to do it to me doesn't mean we can debate that. I suppose whether that I think that's where we are with the evidentiary record, Your Honor. It's that when he was caught, that's what he said. And that was a problem. I do want to take my last 30 seconds to talk about sentencing, which I haven't gotten to address. And I think it's important. You know, my friend on the other side says that this is a double edged sword. I think, Judge Haynes, you're right on the point there, which is that by the time of the sentencing hearing, it's no longer double edged. There's no double second edge. The judge has already indicated on the record he's going to go above the sentencing guidelines, and he's rejected or the parole office has rejected the acceptance of responsibility. So at that point, counsel has an obligation to raise that defense because it's the only thing left. And that is what this court said in Boucher on a profit. Do we know whether in the conference that Judge McBride ordered after Mr Israel wrote the letter about my attorney won't listen to me, whether they agreed, let's not get into mental health. No, I don't know that, Your Honor, unless I'm and isn't Mr Israel in the position to say that at that conference, I told him to bring up the mental health and he didn't. Well, I think that's what he says in his 22 55 motion effectively. But there's no like affidavit that says, having said that, I see my time's run out. I urge this court to reverse the judgment below and grant the 22 55 motion. Thank you very much. Um, Judge Owen, you're muted. You're still muted. There you go. I'm sorry, Mr Mr Malcony. We know that you were acting pro bono in this case. We very, very much appreciate it. And the fine job that you've done for your client. Thank you very much. Thank you. All right. This case is under submission. Thank you very much.